729 So.2d 743 (1999)
STATE of Louisiana
v.
Corey SMILEY.
No. 99-K-0065.
Court of Appeal of Louisiana, Fourth Circuit.
March 3, 1999.
Writ Denied May 14, 1999.
*744 Harry F. Connick, District Attorney, Robert P. Harper, Assistant District Attorney, John R. Dildy, Assistant District Attorney, New Orleans, LA, Attorneys for Relator.
Court composed of Judge MIRIAM G. WALTZER, Judge JAMES F. McKAY III and Judge Pro Tempore JAMES A. GRAY, III.
WALTZER, Judge.
The prosecution invokes our supervisory jurisdiction in order to determine whether the trial court erred when it granted a motion to suppress the evidence. After considering the testimony at the motion hearing and the applicable law, we grant the application for supervisory writs, deny relief and affirm the ruling of the trial court.

STATEMENT OF THE CASE
The defendant was arrested on 18 September 1998. He was charged with the violation of LSA-R.S. 40:966(C), relative to possession of cocaine. On 11 January 1999 a motion to suppress the evidence was granted. The following facts were adduced at the motion:
In the early morning hours of 9 September 1998, two police officers were standing at the corner of St. Ann and Bourbon Streets when an unknown man approached them and reported that a man in a nearby truck had just tried to sell him drugs. As the officers were looking at the truck, they noticed the defendant and two other people leave the truck and stagger into a nearby bar. The unknown man identified Smiley as the man who tried to sell him drugs. The officers called for backup, and within five minutes four officers entered the bar and eventually located Smiley. Smiley agreed to accompany the officers outside. The officers noticed Smiley was having difficulty making his way out of the bar, staggering and weaving. One officer also got close to Smiley as he exited the bar and smelled alcohol on Smiley's breath. When they reached the sidewalk, the officer placed Smiley under arrest for public intoxication, purportedly to keep him from driving away in the truck. Smiley's companions must have also exited the bar because the officers conducted a patdown search of all three for the officers' safety. The officer testified that as one officer was pulling items out of Smiley's pants pocket, a bag of what was later found to be cocaine came out of his pocket.
The officer testified that when he approached Smiley in the bar, he asked Smiley to accompany him outside to talk because the bar was so noisy, and Smiley agreed to do so. He also testified that the bag seized from Smiley contained two-tenths of a gram of cocaine. He admitted neither he nor his fellow officers conducted a field sobriety test on Smiley.

DISCUSSION
The transcript of the suppression hearing indicates the trial court suppressed the evidence because it found "no probable cause." The State argues the stop was lawful because the officers had been tipped off by a citizen *745 about criminal activity. Additionally, the State argues, that the officers had probable cause to arrest the defendant for public intoxication, evidenced by his inability to walk and the smell of alcohol when he left the bar in compliance with their request to do so.
It appears the officers had reasonable suspicion to stop the defendant. In State v. Sneed, 95-2326, p. 3 (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, 1238; writ denied 96-2450 (La.3/7/97), 689 So.2d 1371, this court described the standard to support an investigatory stop:
An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person "is committing, has committed, or is about to commit an offense." La.Code Crim. Proc. Ann. art. 215.1. While "reasonable suspicion" is something less than the probable cause needed for an arrest, it must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (La.App. 4th Cir.1/19/95), 649 So.2d 1078, 1082. The officer's past experience, training and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Jackson, 26,138 (La.App.2nd Cir. 8/17/94), 641 So.2d 1081, 1084.
See also State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713.
Here, the defendant was positively identified by a citizen on the street as the person who had just tried to sell the citizen drugs from the defendant's truck. Therefore, the officers had reasonable suspicion to detain the defendant to investigate this claim.
The court found "no probable cause." It is unclear from the record if the court found that the defendant was under arrest at the point the officers and the defendant left the bar. In State v. Allen, 95-1754, p. 5-6 (La.9/5/96), 682 So.2d 713, 718-719, when considering the factors which comprise an arrest, the Louisiana Supreme Court stated:
La.C.Cr.P. art. 201 defines arrest as "the taking of one person into custody by another ... [by] actual restraint of the person." In distinguishing between an investigatory stop and an arrest, courts have considered numerous factors. In Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), the United States Supreme Court found a stop for questioning was indistinguishable from a traditional arrest because the suspect was not questioned briefly where he was but transported to the police station, was never informed he was free to go and, in fact, would have been restrained had he tried to leave. The United States Supreme Court in Michigan v. Chesternut, 486 U.S. 567, 574, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988) (quoting INS v. Delgado, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984); United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)) stated that "any assessment as to whether police conduct amounts to a seizure implicating the Fourth Amendment must take into account all of the circumstances surrounding the incident in each individual case." The Mendenhall Court also stated that in determining whether a person has been seized under the Fourth Amendment, one must determine whether a reasonable person would have believed he was free to leave. Mendenhall, 466[446] U.S. at 554, 100 S.Ct. at 1877. This court has considered this issue and determined that "it is the circumstances indicating intent to effect an extended restraint on the liberty of the accused, rather than the precise timing of an officer's statements: `You are under arrest,' that are determinative of when an arrest is actually made." State v. Giovanni, 375 So.2d 1360, 1363 (La.1979) (quoting State v. Sherer, 354 So.2d 1038, 1042 (La. 1978)); see also, State v. Davis, 558 So.2d 1379, 1382 (La.[App. 5 Cir.]1990); State v. Simms, 571 So.2d 145, 148 (La.1990). In both Giovanni and Simms, this court found an arrest based on the fact that the defendant was not free to leave.
In Allen, the defendant was asked if he owned a gun, and he replied that it was in the trunk. The defendant then freely and voluntarily consented to the search of his car. The Court noted that during this initial questioning there was no restraint on the defendant's *746 liberty and he was free to leave at anytime. Specifically, no weapon or physical force was used to restrain the defendant. The deputies told the defendant they only wanted to ask him a few questions, and he complied. The defendant was not subjected to a search for weapons, placed in a police car, or handcuffed. Furthermore, the entire questioning and search of the car occurred in the parking lot. Because the consent to search arose from a legal investigatory stop, the motion to suppress evidence obtained as a result of the car search was determined to be properly denied by the trial court.
Likewise, in State v. Bruser, 95-0907 (La. App. 4 Cir. 9/15/95), 661 So.2d 152, our Court found the defendant had not been arrested because although he had been stopped, the officers did not order him from his car or physically restrain him.
Here, the officers requested that the defendant leave the bar with them to talk to them in a less noisy atmosphere. The officer testified he merely requested that they relocate outside, and the defendant willingly agreed to do so. There was no evidence presented to dispute the voluntariness of the defendant's agreement to accompany the officers outside, other than perhaps the specter of four officers converging on the defendant and his companions and asking them to step outside. Nor is there any indication that the trial court did not believe the officers' testimony. The defendant was not under arrest at the time he agreed to accompany them outside.
While they were exiting the bar, the officers noticed the defendant was again staggering. In addition, the officer testified he could smell alcohol on the defendant's breath. The officer testified that at that point, they decided to arrest him for "public intoxication" to keep him from reentering his truck and driving away while under the influence. The officer admitted, however, that he and his companions did not administer any field sobriety tests prior to arresting the defendant.
It is unclear under exactly what provision the defendant was arrested at that point. The only statute which could possibly apply would be LSA-R.S. 14:103, the disturbing the peace statute. Subpart A provides in part: "Disturbing the peace is the doing of any of the following in such a manner as would foreseeably disturb or alarm the public:... (3) Appearing in an intoxicated condition." Here, there was nothing in the officer's testimony which should have led him to believe that the defendant's staggering would disturb or alarm the public. A more analogous provision could be §54-405 of the New Orleans Municipal Code, which provides: "It is unlawful for any person to appear in a public place manifestly under the influence of alcohol, narcotics or other drugs, not therapeutically administered, to the degree that he may endanger himself or other persons or property." However, again there was nothing in the officer's testimony which indicated the defendant's actions at the time he was leaving the bar would endanger the public. The officer testified he arrested the defendant to keep him from entering his truck and driving while intoxicated. However, the officers did not know that the defendant would be leaving anytime soon or that if he were leaving that he would be driving his truck, given the fact that he had two companions with him who could possibly drive, and the officer gave no indication of their condition. Therefore, at the time the officers placed the defendant under arrest, there was no probable cause to arrest him. Thus, the subsequent search which produced the cocaine could not be validated as a search incident to his arrest. See State v. Wilson, 467 So.2d 503, 515 (La.1985); cert. den. Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Johnson, 94-1170 (Lapp. 4 Cir. 8/23/95), 660 So.2d 942; writ denied, State v. Johnson, 95-3044 (La.2/2/96), 666 So.2d 1105.
The only other possible exception to the warrant requirement which could have validated the seizure would be the "plain feel" exception. In order for this exception to apply, the State had to show a basis for a patdown search, during which the officer felt what was immediately apparent as contraband. LSA-C.Cr.P. art. 215.1(B) authorizes a limited frisk for weapons during an investigatory stop. Paragraph B provides:

*747 When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
See also State v. Hunter, 375 So.2d 99 (La. 1979). "The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger." State v. Smith, 94-1502 p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082. As noted by this court in State v. Denis, 96-0956, pp. 7-8 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, 1299, writ denied 97-1006 (La.6/20/97), 695 So.2d 1352:
We recognize that the police have the right to ensure their own safety in an encounter with a suspected criminal. Under both our federal and state Constitutions, however, this right must be balanced against an individual citizen's right to be free from unreasonable searches. Although sometimes appearing to be a legal technicality, Article 215.1 B represents the legislature's attempt to maintain that balance by allowing the officer, who has lawfully stopped an individual, to perform a pat-down for weapons, but only if he "reasonably suspect that he is in danger."
A police officer's duty to enforce and uphold the laws includes not only those statutes that define and prohibit criminal conduct, but also those which define and limit the government's intrusion into the lives of its citizens. Unless the plain language of Article 215.1 B is interpreted as authorizing an officer to frisk every pedestrian who is stopped pursuant to subsection A, the only way a court can determine if the officer reasonably suspected that he was in danger is to require him to express that suspicion, and explain upon what it is based. Eliminating the requirement for such articulation not only eviscerates this statute, but also opens the door for potential abuse by the rare officer who acts upon personal prejudices rather than actual observation and experience. (emphasis supplied)
Here, the officer testified that after placing the defendant under arrest for "public intoxication", the officers conducted a patdown search of the defendant and his companions for their "safety". The officer did not allude to any circumstances which would have led them to believe they were in danger or that the defendant and his companions were armed, except perhaps the tip from the citizen that the defendant had tried to sell him drugs, a tip which had not been corroborated at that time. Thus, the State did not set forth a sufficient showing to uphold a frisk of the defendant and his companions.
Even if the State had shown a basis for the frisk, the State then failed to show the cocaine was discovered pursuant to the "plain feel" exception. In Denis, 96-0956 pp. 8-9, 691 So.2d at 1300, this court set forth the requirements of the "plain feel" exception:
[E]vidence discovered during a lawful investigatory frisk may be seized under the "plain feel" exception to the warrant requirement, as explained in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). However, just as the "plain view" doctrine requires that an object's incriminating character be immediately obvious when seen, the "plain feel" doctrine requires the tactile discovery of "an object whose contour or mass makes its identity immediately apparent." Dickerson at 374, 113 S.Ct. at 2137, 124 L.Ed.2d at 346. Thus, in State v. Parker, 622 So.2d 791 (La.App. 4th Cir.), writ denied, 627 So.2d 660 (1993), the seizure of a matchbox containing cocaine detected during a pat-down search was found not to fall within the "plain feel" exception because there was no evidence that a matchbox's shape was identifiable as contraband. In contrast, in State v. Stevens, 95-501 (La. App. 5th Cir.3/26/96), 672 So.2d 986, the seizure of drugs in a matchbox detected during a lawful pat-down was upheld because the officer testified that her prior experience indicated that most street-level crack dealers carried their drugs in a matchbox. Similarly, where testimony establishes *748 that an object detected during a pat-down was immediately identifiable as a "crack pipe," suppression of the cocaine residue contained within the pipe is not required. State v. Lavigne, 95-0204 at p. 9, 675 So.2d at 778; State v. Livings, 95-251, pp. 5-6 (La.App. 3d Cir.11/15/95), 664 So.2d 729, 733, writ denied, 95-2906 (La.2/28/96), 668 So.2d 367.
There was no testimony that it was immediately apparent that there was a small bag of cocaine in the defendant's pocket. On the contrary, the officer testified that as another officer emptied the defendant's pocket, the small bag fell out. Thus, even if the court were to find that a frisk was justified under the circumstances of this case, the search exceeded the scope of a frisk, and the seizure could not be justified under the "plain feel" exception to the warrant requirement.
The defendant was not under arrest at the time he left the bar, but it also there was no basis for arresting the defendant once he was outside. Thus, the cocaine discovered incident to his arrest was not lawfully seized. At that point, the officers had reasonable suspicion to conduct an investigatory stop, but the State failed to show a sufficient basis to support a frisk, and even if it had shown a basis, the cocaine was not properly seized pursuant to the "plain feel" exception to the warrant requirement. As noted by this Court in State v. Scull, 93-2360, p. 9 (La. App. 4 Cir. 6/30/94), 639 So.2d 1239, 1245, writ denied 94-2058 (La.11/11/94), 644 So.2d 391: "The trial court is vested with great discretion when ruling on motion to suppress." See also State v. Mitchell, 95-2454 (La.App. 4 Cir. 7/31/96), 679 So.2d 178. The trial court did not abuse its discretion by suppressing the evidence. Accordingly, we grant the application for supervisory writs, deny relief and affirm the ruling of the trial court on the motion to suppress.
APPLICATION FOR SUPERVISORY WRITS GRANTED. RELIEF DENIED. JUDGMENT OF THE TRIAL COURT AFFIRMED.