763 So.2d 713 (2000)
STATE of Louisiana
v.
Marva L. WATSON a/k/a Lawrence Lackings.
No. 99-KA-0243.
Court of Appeal of Louisiana, Fourth Circuit.
May 3, 2000.
*714 Harry F. Connick, District Attorney Of Orleans Parish, Nicole Barron, Assistant District Attorney of Orleans Parish, New Orleans, LA, Counsel for Plaintiff/Appellee.
Yvonne Chalker, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
(Court composed of Judge WILLIAM H. BYRNES, III, Judge MOON LANDRIEU, Judge DENNIS R. BAGNERIS, Sr.).
LANDRIEU, Judge.
Defendant appeals his conviction and sentence for possession of heroin.
On October 7, 1998, the appellant was charged with one count of possession of heroin. At his arraignment, he pled not guilty. On October 19th, after reviewing the police report, defense counsel withdrew his motions for preliminary hearing and all discovery motions. On October 26th, a twelve-person jury found defendant guilty as charged. The trial court sentenced him on November 3rd to serve four years at hard labor without benefit of probation or suspension of sentence.[1] On that *715 same date, the court denied his motion to reconsider sentence, but granted his motion for appeal.

FACTS
At approximately 5:00 p.m. on October 5, 1998, officers of the Community Oriented Policing Squad in the Florida Housing Project were on patrol in the 3500 block of Law Street. They observed an unknown man walk into the hallway of one of the project's buildings. The man soon walked out of the hallway with another unknown man. One of the men, later identified as the defendant Marva Watson a/k/a Lawrence Lackings, was holding his right hand in a balled-up manner. The officers approached Lackings and asked him to open his hand to show them what was in his fist. At that point, Lackings dropped a small tinfoil packet from his hand, and the packet fell to the ground. One officer told Lackings he was under investigation for narcotics activity, while the other officer retrieved the packet. Lackings started to leave, and when the officers discovered a white powder residue inside the packet, they advised Lackings he was under arrest. A struggle ensued, during which the officers subdued Lackings through the use of pepper spray. The other man escaped during the struggle. The officers handcuffed Lackings and took him to Charity Hospital for treatment. They later transported him to Central Lockup.
The parties stipulated that the substance inside the tinfoil tested positive for heroin.
The defendant identified himself at trial as Anthony Lackings. He testified he was riding through the project on his bicycle when the officers stopped him. He testified the officers told him he was under arrest and started asking him questions about a young man with plaits in his hair. The defendant testified that when he protested that he did not know that person, the officers removed him from his bicycle with such force that he later went to the hospital. He denied fighting with the officers. He testified the officers did not tell him why he had been arrested until after he had been put in the police car. On cross-examination, he admitted having prior misdemeanor convictions.

ERRORS PATENT
Our review of the record reveals there are no errors patent.

ASSIGNMENTS OF ERROR
By his first assignment of error, the defendant contends the evidence seized at his arrest should have been suppressed. However, he is estopped from raising this issue on appeal because it was not raised in the trial court. By his second assignment, the defendant contends his counsel was ineffective for two reasons: (1) Counsel withdrew his motion for preliminary hearing upon receiving the police report in this case; and (2) Counsel failed to file a motion to suppress the evidence.
Concerning the issue of ineffective assistance of counsel, this court in State v. Francis, 96-2389, pp. 8-9 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 462, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741, stated:
Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced him. With regard to counsel's performance, the defendant must show that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. As to prejudice, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, i.e. a trial whose result is reliable. Id. Both showings must be made before it can be found that the defendant's conviction resulted from a breakdown in the adversarial process that rendered the trial result unreliable. Id. A claim *716 of ineffective assistance may be disposed of on the finding that either one of the two Strickland criteria has not been met. State v. James, 555 So.2d 519 (La.App. 4 Cir.1989), writ denied 559 So.2d 1374 (La.1990). If the claim fails to establish either prong, the reviewing court need not address the other. Murray v. Maggio, 736 F.2d 279 (5th Cir. 1984).
This court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105 (La.App. 4th Cir.1986); see also State v. Addison, 94-1423 (La.App. 4 Cir. 11/13/96), 684 So.2d 477. Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
Here, defense counsel withdrew his motion for preliminary hearing after reading the police report. The purpose of a preliminary hearing is to determine if there is probable cause to believe a defendant has committed a crime in order to hold him on his bond obligation for trial. See La.C.Cr.P. art. 296. However, a conviction of a defendant renders moot any failure to provide a preliminary examination in the absence of prejudice. State v. Washington, 363 So.2d 509 (La.1978); State v. Price, 482 So.2d 135 (La.App. 4th Cir.1986). Here, the trial transcript indicates there was probable cause to hold the defendant for trial because there was probable cause to believe he had committed the crime. When the officers stopped the defendant, he dropped a tinfoil packet that was found to contain heroin. As such, even if counsel had requested a preliminary hearing and one had been held, the State could have shown probable cause to believe the defendant committed the crime charged, simple possession of heroin. Thus, we find that there was no prejudice to the defendant by counsel's failure to request a preliminary hearing. Because the appellant is unable to prove the "prejudice" prong of the Strickland test, counsel was not ineffective for his failure to move for a preliminary hearing.
Defendant's second argument is that his counsel was ineffective because he failed to file a motion to suppress the evidence based upon his review of the police report, a copy of which is not in the record before this court. Counsel also failed to object to the introduction of this evidence at trial. However, if there was no basis for the suppression of this evidence, then the defendant was not prejudiced by defense counsel's failure to move to suppress the evidence or to object to its introduction. Without a showing of prejudice, the defendant's claim of ineffective assistance of counsel fails. Therefore, this court must consider if the evidence was illegally seized. If it was, then the defendant was prejudiced by counsel's failure to move to suppress it and to object to its introduction at trial. However, if the evidence was properly seized, then it was admissible at trial, and there was no basis for a motion to suppress it or an objection to its introduction.
The defendant dropped the tinfoil packet containing the heroin after the officers stopped him and asked him to open his hand, which was clenched into a fist. He argues the officers were without authority to stop him. In State v. Sneed, 95-2326, p. 3 (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, 1238, writ denied, 96-2450 (La.3/7/97), 689 So.2d 1371, this court discussed the standard for determining if officers have reasonable suspicion to support an investigatory stop:
An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person "is committing, has committed, or is about to commit an offense." La.Code Crim. *717 Proc. Ann. art. 215.1. While "reasonable suspicion" is something less than the probable cause needed for an arrest, it must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (La.App. 4th Cir.1/19/95), 649 So.2d 1078, 1082. The officer's past experience, training and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Jackson, 26,138 (La.App. 2nd Cir.8/17/94), 641 So.2d 1081, 1084.
See also: State v. Smiley, 99-0065 (La. App. 4 Cir. 3/3/99), 729 So.2d 743, writ denied, 99-0914 (La.5/14/99), 743 So.2d 651; State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713.
An "actual stop" occurs when an individual submits to a police show of authority or is physically contacted by the police. Tucker. An "imminent actual stop" occurs when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain. Id.
Here, because the officers actually stopped the defendant and asked him to open his hand, they needed reasonable suspicion of criminal activity to do so. The defendant argues the officers had no reasonable suspicion to stop him. In State v. Ratliff, 98-0094 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, writ denied, 99-1523 (La.10/29/99), 748 So.2d 1160, a case similar to the instant one, this court found the officers did not have reasonable suspicion to stop and detain the defendant. In Ratliff, officers on patrol in an area known for drug activity saw the defendant and other men standing on the sidewalk in front of a residence. The defendant had his arms crossed and his fist clenched. The officers ordered the men to approach and put their hands on the police car. As defendant did so, he dropped something from his clenched hand. The officers retrieved the object and found it to be crack cocaine. Rejecting the State's arguments that the defendant abandoned the cocaine without any police interference, this court then looked to see if the officers had reasonable suspicion to stop and detain the defendant. This court recognized that the reputation of an area is a factor to be considered in determining reasonable suspicion, and that deference must be given to an officer's experience. However, considering the totality of the circumstances, this court found the defendant's folded arms and clenched fist, in the absence of any indication of criminal activity, was insufficient to support a finding of reasonable suspicion.
In other cases involving fists in which this court has found reasonable suspicion, there have been additional suspicious factors that contributed to this finding. In State v. Williams, 98-3059 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, officers patrolling in an area known for drug activity saw the defendant and an unknown man standing together. The unknown man had his palm upturned, showing something to the defendant. The defendant was reaching into the other man's hand when he noticed the officers. The other man withdrew his hand and ran, while the defendant remained in place. The officers detained the defendant, frisked him, and felt a bulge in his pocket, which was discovered to be drugs. This court upheld the stop. The court noted that the action of showing something in a hand to another person, by itself, would not have given the officers reasonable suspicion. However, this court found the flight of the defendant's companion supplied the factor necessary to support a finding of reasonable suspicion of criminal activity on the defendant's part. The court further found the officers were justified in frisking the defendant and were justified in seizing the drugs, which were discovered by "plain feel" during the frisk.
In State v. Riley, 95-0664 (La.App. 4 Cir. 5/1/96), 673 So.2d 1279, writ denied, 96-1294 (La.11/1/96), 681 So.2d 1257, officers *718 on patrol in the French Quarter saw the defendant standing with another man, showing the man something in his upturned palm. Shortly thereafter, the officers saw the defendant on another corner with another man, this time with something in a towel in his upturned palm. The officer testified that an upturned palm was common in street sales of drugs. This court found the defendant's actions, in two separate places in a short period of time, added to the officer's testimony concerning the use of upturned palms in drug sales, was sufficient to give the officers reasonable suspicion to stop the defendant. In State v. Parker, 94-0624 (La.App. 4 Cir. 11/18/94), 645 So.2d 1309, writ denied, 94-3042 (La.9/15/95), 660 So.2d 446, the officers had received a tip from a pedestrian that a man on a bicycle was selling drugs on a certain corner. The officers went to the corner and saw the defendant, whose clothing fit the description given in the tip. The defendant approached the officers with a clenched fist. At the officers' request, he opened his hand, which contained drugs. On review, this court found the tip, combined with the clenched fist, gave the officers reasonable suspicion to stop the defendant.
Here, by contrast, there is no indication the officers had received a tip about drug activity in the hallway from which the defendant emerged. Indeed, the officers did not even testify that the area was known for drug activity; the most they testified was that the events took place in the hallway of a housing project. They did not see any criminal activity. The only thing they saw was (apparently) the defendant walking into the hallway and then he and another man walking out of the hallway, and at that time the defendant had a clenched fist.
Based upon only these factors, we find that as in Ratliff, the State failed to show there was reasonable suspicion to stop the defendant and order him to open his clenched fist. We therefore conclude the evidence was illegally seized and should not have been admitted at trial. Because there would have been no basis to support the defendant's conviction without this evidence, we find the defendant was prejudiced by counsel's failure to file a motion to suppress. Accordingly, based on the record before this court, we conclude that defendant's counsel was constitutionally ineffective.

CONCLUSION
For the reasons stated, we vacate the defendant's conviction and sentence, and remand the matter to the trial court for further proceedings consistent with this opinion.
VACATED AND REMANDED.
BYRNES, J., Dissents With Reasons.
BYRNES, J., Dissenting with Reasons.
I respectfully dissent based on my conclusion that the evidence was properly seized. There had not been an imminent actual stop of the defendant Marva Watson a/k/a Lawrence Lackings ("Watson") when he discarded the tin foil. There was no expectation of privacy and no violation of Watson's custodial rights.

Property Abandoned before the Imminent Actual Stop
If the defendant abandons or discards property as a result of an actual stop or an imminent actual stop, the officers are required to have at least reasonable suspicion to support the stop. La. C.Cr.P. art. 215.1 A provides: "A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." Reasonable suspicion for an investigatory stop is something less than probable cause. It must be determined under the facts of each case whether the officer had sufficient articulable knowledge of particular facts and circumstances to justify an infringement upon an individual's right to be free from governmental interference. State v. Albert, 553 So.2d *719 967 (La.App. 4 Cir.1989). The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Belton, 441 So.2d 1195 (La.1983), certiorari denied. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
Evidence abandoned by a citizen and recovered by the police as a direct result of an unconstitutional seizure may not be used in a resulting prosecution against the citizen. When the citizen is stopped without reasonable cause or when a stop without reasonable cause is imminent, the right to be left alone is violated and renders unlawful any resulting seizure of abandoned property. State v. Tucker, 626 So.2d 707 (La.1993) (opinion reaffirmed and reinstated on rehearing). If property is abandoned without a prior unlawful intrusion into a citizen's right to be free from governmental interference, then it can be lawfully seized. State v. Britton, 93-1990 (La.1/27/94), 633 So.2d 1208. There is no expectation of privacy and no violation of the person's custodial rights. Tucker, supra.
An actual stop occurs when an individual submits to a police show of authority or is physically contacted by the police. While the Fourth Amendment only protects individuals from "actual stops" by police officers, California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed. 690 (1991), the Louisiana Constitution also protects individuals from "imminent actual stops." State v. Tucker, 626 So.2d at 712. An "imminent actual stop" occurs "when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain...." Id. at 712. In Tucker, the Louisiana Supreme Court stated:
Although non-exhaustive, the following factors may be useful in assessing the extent of police force employed and determining whether that force was virtually certain to result in an actual stop of an individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter.
Id. at 712-713.
In Tucker, id., acting on repeated complaints of drug-related activity, the police conducted a drug sweep in certain highcrime areas. The sweep began when approximately ten to twelve marked police vehicles carrying 20 to 30 officers converged. When two men noticed the approaching police cars, they quickly broke apart and began to leave. Officer Wilson stopped his car and began to get out while simultaneously ordering the two men to "halt" and "prone out." One man lay down immediately. The other, Tucker, moved several steps and tossed away a plastic bag. He then lay down. The police retrieved the bag that contained 47 rolled marijuana cigarettes. The Louisiana Supreme Court noted:
.... while the Fourth Amendment only protects individuals from "actual stops" by law enforcement officers, [California v.] Hodari D, [499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) ], our constitution also protects individuals from "imminent actual stops." Therefore, it becomes incumbent upon us to now determine what constitutes an "actual stop" and an "imminent actual stop" as those terms were used in Belton.

... We agree with the United States Supreme Court, an "actual stop" of an individual has not occurred when a police officer yells "Halt!" at a fleeing form which continues to flee. Thus, we hold that an individual has not been actually "stopped" unless he submits to a police show of authority or *720 he is physically contacted by the police.

Tucker, 626 So.2d at 712. [Emphasis added.]
The Louisiana Supreme Court balanced the competing interests in determining the defendant's rights against unreasonable search and seizures. Reviewing whether an actual stop of an individual is virtually certain or is imminent, the Louisiana Supreme Court could not conclude that an actual stop of Tucker was virtually certain to occur, and at the time he abandoned the marijuana, he had not been unconstitutionally seized. The Supreme Court found that the seizure of the abandoned marijuana was lawful. It upheld Tucker's conviction.
In State v. Wilson, 95-0619 (La.App. 4 Cir. 6/7/95), 657 So.2d 549, three uniformed police officers were patrolling in a marked police unit when they saw a group of men in a courtyard in the Desire Housing Project. They drove the car about two car lengths up onto the grass toward the men. They did not have their lights or siren turned on. Wilson left the group and began walking away. When the car stopped about five feet away, Wilson dropped a pill bottle and ran away. The officers were not out of the car and had not approached with weapons drawn at the time that Wilson dropped the bottle. Two officers chased Wilson and one retrieved the pill bottle that contained crack cocaine. This Court considered the Tucker factors, found that there had been no imminent stop, and concluded that the pill bottle was lawfully seized. Id. at 551.
In State v. Britton, supra, 633 So.2d at 1208, two police officers were on patrol in a marked unit when they observed several men kneeling and apparently shooting dice in front of a Spur Station. The men saw the police car and sprang to their feet. Britton began walking hastily to the door of the station. The officers pulled their car up to the door and followed him inside. Britton removed a packet containing several rocks of cocaine from his pocket and put it in a gum rack. Britton then moved away to a cooler and appeared to be choosing a drink. One officer retrieved the packet while the other detained Britton. The Louisiana Supreme Court found that the police officers had a right just as any citizen to follow Britton into the store, and they had not detained him or arrested him at that point. The property abandoned was held to be lawfully seized. Id. at 1209.
In the present case the officers did not actually stop Watson prior to his abandonment of the evidence. The question then becomes whether there was an actual imminent stop under Tucker, supra. The officers did not come upon Watson with such force that regardless of Watson's attempts to elude the encounter, an actual stop was "virtually imminent." Id., 626 So.2d at 712. The officers were not in close proximity at the beginning of the encounter. Watson was not surrounded. Only two officers were on foot in the project. There was no testimony that weapons were drawn. When the officer told Watson to open his clenched fist, he dropped his arm and the tin foil fell to the ground. Rather than opening his fist to allow the officer to see what he had in his palm, Watson dropped his arm so that the tin foil fell down instead. At trial, Officer Michael Sinegar testified that as the police approached the hallway on foot, they observed Watson walk out of the hallway along with another unknown subject. The Officer stated:
He had his right fist. He had his right hand with his right first in a balled up manner. As I asked Mr. Lackings [Watson] to open up his right hand, he droppedhe dropped his right arm to the ground and opened his right hand, and he dropped a small piece of aluminum foil.
Officer Sinegar stated that his partner recovered the tin foil. Officer Sinegar testified:
My partner looked inside. And at that time Mr. Lackings [Watson] was *721 continuing to walk. And I advised him he was under arrest for a drug law violation.
There was no imminent actual stop before Watson dropped the tin foil. Watson continued to walk away and had not submitted to a police show of authority and he had not been physically contacted by the police. It could be argued that Watson did unclench his fist as the officer asked; however, under the circumstances by dropping his arm and dropping the tin foil, it is more reasonable to conclude that Watson was eluding what the officer asked him to do, and Watson had not submitted to police authority.
Watson's discard of tin foil was not a result of an actual stop or an imminent actual stop. Therefore, the State did not have to show that the officers had a reasonable suspicion to support a stop because there was no stop or imminent actual stop before Watson abandoned the evidence. The arrest for this offense did not take place until after Watson abandoned the tin foil. Watson had no expectation of privacy of the evidence lawfully seized.
When the officers retrieved the tin foil abandoned by Watson, the officers had probable cause to arrest Watson for drug possession. The property was abandoned without a prior unlawful intrusion into a citizen's right to be free from governmental interference, and it was lawfully seized.

Investigatory Stop or Imminent Investigatory Stop
Although there is no need to show that an investigatory stop was justified because Watson had not been stopped before he abandoned the tin foil, I further disagree with the majority's opinion based on my conclusion that the police would have had reasonable cause to make an investigatory stop in any event. The officers had reason to believe that under the totality of circumstances, Watson was engaging in criminal activity when they saw him in the hallway in the housing project with a clenched fist.
A reviewing court must take into account the "totality of the circumstances whole picture," giving deference to the inferences and deductions of a trained police officer "that might well elude an untrained person." United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048. Deference should be given to the experience of the policemen who were present at the time of the incident; in reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549.
In State v. Huntley, supra, 708 So.2d at 1049, the Louisiana Supreme Court stated:
In making a brief investigatory stop on less than probable cause to arrest, the police "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore "articulate something more than an "`inchoate and unparticularized suspicion or "hunch."'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only "`some minimal level of objective justification,...'" Sokolow, 490 U.S. 1, 7, 109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). A reviewing court must take into account the "totality of the circumstancesthe whole picture," giving deference to the inferences and deductions of a trained officer that might well elude an untrained person. *722 Cortez, 449 U.S. at 418, 101 S.Ct. at 695. The court must also weigh the circumstances known to the police `not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' Id." [Emphasis added.]
In State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 881, the Louisiana Supreme Court found that: "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action," citing Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978). Even if the officers do not articulate reasons justifying a stop and search, the officers need "articulable facts" taking into account the entire picture. In other words, the officers need not articulate reasons justifying a stop; however, articulable facts must be found to be gleaned from the record under the totality of circumstances.
The present case provides two factors as found in State v. Ganier, 591 So.2d 1328 (La.App. 4 Cir.1991), in which the police officers were patrolling a housing project in New Orleans known to be a center of drug trafficking. The juvenile saw the officers, turned "suspiciously", began to walk away slowly, and then began to run. The officers chased the defendant until he was apprehended. This court found that two factors were sufficient to justify a stop of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant. This court noted:
...Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street corner who is detained by the police simply because he is there.

State v. Ganier, 591 So.2d at 1330. [Emphasis added.]
In the present case the officers saw Watson and another individual walk into the hallway of the Florida housing project. The defense attorney asked Officer Sinegar: "It is not uncommon for this area where you encountered Mr. Lackings [Watson] for people to go into this hallway and do drugs, is it?" The officer replied, "No, sir." Although the officer did not articulate that the hallway in the housing project was a common place to find subjects with drugs, this factor is articulable from the record. Deference should be given to the officer's experience and training in determining that Watson may been engaging in illegal activity, considering the above factor, and considering Watson's demeanor, including his clenched fist.
The officers' inferences from the facts at hand were reasonable, and the officers had reason to believe that Watson was engaged in illegal activity. The police had at least a minimal level of objective justification to conclude that Watson was engaged in illegal activity. Therefore, the police would have had reasonable suspicion and justification for an investigatory stop although an investigatory stop had not taken place before Watson abandoned the tin foil.

Claim of Ineffective Assistance of Counsel
Considering my conclusion that the evidence was properly seized, I find no showing of ineffective assistance of counsel based on the defense attorney's failure to file a motion to suppress.
However, considering the majority's finding of ineffective assistance of counsel, that issue generally is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Johnson, 557 So.2d *723 1030 (La.App. 4 Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Landry, 499 So.2d 1320 (La.App. 4 Cir. 1986). Generally, a review and ruling by the appellate court on appeal is proper without a remand for a hearing when the claim of ineffective assistance of counsel is determined to have no merit. However, if the appellate court finds that a claim of ineffective assistance may have merit, a decision cannot be fully determined by this court because the State, as well as the defendant, have the right to question the trial defense attorney at a full evidentiary hearing in the trial court. The defense attorney is entitled to support his reasons for his trial strategy in defending the defendant.
In the present case where the majority finds that the defendant's claim of ineffective assistance of counsel has merit, the defense attorney is entitled to a hearing on that issue in the trial court. Therefore, the majority's determination of ineffective assistance of counsel is premature because a hearing has not been held. In this case, the record does not disclose sufficient evidence to rule on the merits of the claim. Therefore defendant should raise this issue via an application for post-conviction relief.
Accordingly, I would affirm Watson's conviction and sentence. Defendant may raise his ineffective assistance of counsel claim by an application for post conviction relief.
NOTES
[1] Although the minute entry reflects that the court imposed the sentence without benefit of probation, parole, or suspension of sentence, the transcript indicates the court did not prohibit parole eligibility. In cases of conflict between a minute entry and a transcript, the content of the transcript controls. See State v. Page, 95-2401 (La.App. 4 Cir. 8/21/96), 680 So.2d 700, writ denied 96-2352 (La.2/21/97), 688 So.2d 522.