798 So.2d 1191 (2001)
STATE of Louisiana
v.
Samson BRILEY.
No. 2001-KA-0143.
Court of Appeal of Louisiana, Fourth Circuit.
October 3, 2001.
Harry F. Connick, District Attorney of Orleans Parish, Leslie Parker Tullier, Assistant District Attorney of Orleans Parish, New Orleans, LA, Counsel for Plaintiff/Appellee.
Mary Constance Hanes, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
Court Composed of Judge MIRIAM G. WALTZER, Judge PATRICIA RIVET MURRAY, and Judge MAX N. TOBIAS, JR.
MAX N. TOBIAS, JR., Judge.
On 18 July 2000, the State filed a bill of information charging the defendant-appellant, Samson Briley ("Briley"), with one count of simple POSSESSION of cocaine, a violation of La. R.S. 40:967(C). Briley was arraigned and entered a not guilty plea on 21 July 2000. His motion to suppress was heard and denied on 21 August 2000. On 1 September 2000, Briley moved for appointment of new counsel; that request was denied. A trial occurred before a six-person jury on 13 September 2000, which returned a verdict of guilty as *1192 charged. On 18 September 2000, Briley, through counsel, filed motions for new trial and for post-judgment verdict of acquittal, that were denied. The court sentenced Briley to serve thirty months at hard labor. Briley moved to reconsider the sentence; the motion was denied. His motion for an appeal was granted. On 19 September 2000, the State filed a multiple bill of information charging Briley to be a second offender. Briley admitted to this allegation after being informed of his rights. The court then found Briley to be a second offender, vacated the previously imposed sentence, and resentenced him to thirty months at hard labor, the sentence to run concurrently with any other sentence. The court also recommended that Briley be placed in the Blue Walters Drug Rehabilitation Program and immediately be transported to the Department of Corrections.

STATEMENT OF THE FACTS
On 9 June 2000, Detective Dan Anderson and Officer Jason Gonzales of the New Orleans Police Department, Fifth District, were on proactive patrol in the area of North Dorgenois and Allen Streets, an area known to the police for high narcotics activity. As the officers approached the intersection, they observed Briley and another man. Briley had an object in his hand; the other person was looking at it. When Briley and his companion noticed the police car, they abruptly turned in different directions and walked away. The second subject was not stopped, although an effort was made to find him. Officer Gonzales exited the police car and walked behind Briley as Detective Anderson approached him from the front. Briley, who still had the unknown object in his hand, put his hand to his mouth. Because the officers believed that Briley had put contraband in his mouth in an attempt to dispose of it, they physically detained him. Detective Anderson observed remnants of crack cocaine on Briley's face. The officers formally arrested Briley, who by that time appeared to be having a seizure. Briley said he was having trouble breathing and that he had swallowed cocaine. He spit out his false teeth upon which the officers could see a white residue. The officers transported Briley to Charity Hospital for medical care. They also seized $91.00 in currency from him, eleven $1.00, six $5.00, three $10.00, and one $20.00.
At trial, John Palm, who was stipulated to be an expert in the identification of narcotics, testified that he tested a residue on a partial denture. The residue tested positive for cocaine.
Dorothy Jones testified at trial that she was a custodian of medical records at Charity Hospital. She identified an emergency room record dated 9 June 2000 pertaining to Briley. The records reflected a complaint of ingestion of crack cocaine.
Briley presented no witnesses at trial.

ERRORS PATENT
A review of the minute entries in this matter reveals no errors patent. However, the transcript of the sentencing proceedings held on 18 September 2000, reflects that Briley was sentenced before his counsel filed a motion for new trial and a motion for post-judgment acquittal, which motions were then denied. In contrast, the minute entry states that these motions were filed and denied, and then Briley through counsel announced readiness for sentencing and was sentenced. In the event of a conflict between a minute entry and a transcript, the transcript controls. State v. Brown, 97-2260 (La.App. 4 Cir. 10/6/99), 746 So.2d 643. Thus, it appears from the transcript that the trial court failed to observe the mandatory twenty-four hour delay between the denial of post-trial motions and sentencing. *1193 However, under La.C.Cr.P. arts. 821 and 853 the motions had to be filed prior to sentencing, and Briley's counsel in this case admitted that he was tardy in the filing of the motions. Furthermore, the sentence imposed on 18 September 2000 was vacated the next day following Briley's guilty plea to the multiple bill at which time he expressly waived sentencing delays. Therefore, any error which may have occurred at the original sentencing was cured the following day at the sentencing on the multiple bill.

DISCUSSION
In his sole assignment of error, Briley contends that the police officers had no reasonable suspicion to stop him and therefore all evidence, including his statement, should have been suppressed. In State v. Watson, 99-0243 (La.App. 4 Cir. 5/3/00), 763 So.2d 713, this court reaffirmed the standard for determining whether the police have a basis for the detention of a defendant and also reviewed cases involving facts similar to the instant case:
In State v. Sneed, 95-2326, p. 3 (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, 1238, writ denied, 96-2450 (La. 3/7/97), 689 So.2d 1371, this court discussed the standard for determining if officers have reasonable suspicion to support an investigatory stop:
An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person "is committing, has committed, or is about to commit an offense." La. Code Crim. Proc. Ann. art. 215.1. While "reasonable suspicion" is something less than the probable cause needed for an arrest, it must be based upon particular articulable facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (La.App. 4th Cir. 1/19/95), 649 So.2d 1078, 1082. The officer's past experience, training and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Jackson, 26,138 (La. App. 2nd Cir. 8/17/94), 641 So.2d 1081, 1084.
See also State v. Smiley, 99-0065 (La. App. 4 Cir. 3/3/99), 729 So.2d 743, writ denied, 99-0914 (La. 5/14/99), 743 So.2d 651; State v. Allen, 95-1754 (La. 9/5/96), 682 So.2d 713.
* * *
In State v. Ratliff, 98-0094 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, writ denied, 99-1523 (La. 10/29/99), 748 So.2d 1160, a case similar to the instant one, this court found the officers did not have reasonable suspicion to stop and detain the defendant. In Ratliff, officers on patrol in an area known for drug activity saw the defendant and other men standing on the sidewalk in front of a residence. The defendant had his arms crossed and his fist clenched. The officers ordered the men to approach and put their hands on the police car. As defendant did so, he dropped something from his clenched hand. The officers retrieved the object and found it to be crack cocaine. Rejecting the State's arguments that the defendant abandoned the cocaine without any police interference, this court then looked to see if the officers had reasonable suspicion to stop and detain the defendant. This court recognized that the reputation of an area is a factor to be considered in determining reasonable suspicion, and that deference must be given to an officer's experience. However, considering the totality of the circumstances, this court found the defendant's folded arms and clenched fist, in the absence of any indication of criminal activity, was insufficient *1194 to support a finding of reasonable suspicion.
In other cases involving fists in which this court has found reasonable suspicion, there have been additional suspicious factors that contributed to this finding. In State v. Williams, 98-3059 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, officers patrolling in an area known for drug activity saw the defendant and an unknown man standing together. The unknown man had his palm upturned, showing something to the defendant. The defendant was reaching into the other man's hand when he noticed the officers. The other man withdrew his hand and ran, while the defendant remained in place. The officers detained the defendant, frisked him, and felt a bulge in his pocket, which was discovered to be drugs. This court upheld the stop. The court noted that the action of showing something in a hand to another person, by itself, would not have given the officers reasonable suspicion. However, this court found the flight of the defendant's companion supplied the factor necessary to support a finding of reasonable suspicion of criminal activity on the defendant's part. The court further found the officers were justified in frisking the defendant and were justified in seizing the drugs, which were discovered by "plain feel" during the frisk.
In State v. Riley, 95-0664 (La.App. 4 Cir. 5/1/96), 673 So.2d 1279, writ denied, 96-1294 (La. 11/1/96), 681 So.2d 1257, officers on patrol in the French Quarter saw the defendant standing with another man, showing the man something in his upturned palm. Shortly thereafter, the officers saw the defendant on another corner with another man, this time with something in a towel in his upturned palm. The officer testified that an upturned palm was common in street sales of drugs. This court found the defendant's actions, in two separate places in a short period of time, added to the officer's testimony concerning the use of upturned palms in drug sales, was sufficient to give the officers reasonable suspicion to stop the defendant. In State v. Parker, 94-0624 (La.App. 4 Cir. 11/18/94), 645 So.2d 1309, writ denied, 94-3042 (La. 9/15/95), 660 So.2d 446, the officers had received a tip from a pedestrian that a man on a bicycle was selling drugs on a certain corner. The officers went to the corner and saw the defendant, whose clothing fit the description given in the tip. The defendant approached the officers with a clenched fist. At the officers' request, he opened his hand, which contained drugs. On review, this court found the tip, combined with the clenched fist, gave the officers reasonable suspicion to stop the defendant.
Watson, pp. 5-7, 763 So.2d at 716-18. This court ultimately determined in Watson that defense counsel was ineffective in withdrawing the motion to suppress the evidence. We noted that the only articulated basis for the stop of the defendant was the police observing an unknown man entering a hallway of a housing project, then walking out of the hallway with a second person; one of these two persons, who was later identified as the defendant, was holding his right hand in a clenched fashion.
At the motion to suppress hearing, as well as at trial, the police officers testified that the area where they observed Briley was well-known for drug activity. Both officers believed that the actions of the two subjects, one of whom was holding out his hand while the other looked at an object, were consistent with a drug transaction. Furthermore, when the two subjects saw the police, they both turned around and walked in different directions. *1195 Flight alone from police officers alone will not provide justification for a stop. State v. Benjamin, 97-3065, p. 3 (La. 12/1/98), 722 So.2d 988, 989, and State v. Sartain, 98-0378, pp. 17-18 (La.App. 12/1/99), 746 So.2d 837, 849, writ denied, XXXX-XXXX (La. 9/15/00), 769 So.2d 4. However, flight from police officers is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable suspicion to stop. State v. Fortier, 99-0244, p. 7 (La. App. 4 Cir. 1/26/00), 756 So.2d 455, 459, writ denied, XXXX-XXXX (La. 9/22/00), 768 So.2d 1285, citing Benjamin, supra. Further, flight by one's companion at the sight of police can be a factor in determining reasonable suspicion. Id. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened. Benjamin, supra; Fortier, 99-0244 at p. 7, 756 So.2d at 460.
At the motion hearing, Officer Gonzales testified that Briley, when he saw Detective Anderson approaching, "immediately turned around as if to flee. And we saw him place a white object into his mouth and began chewing it." In the officer's experience, this action was consistent with an attempt to destroy narcotics. Thus, the officers in this case had far more of a basis to conclude that Briley was in possession of narcotics than in Watson, supra, where the defendant engaged in no nervous behavior or attempt to elude the police before being ordered to open his hand.
As this court noted in State v. Scull, 93-2360, p. 9 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239: "The trial court is vested with great discretion when ruling on motion to suppress." In this case, the trial court did not abuse its discretion when it concluded that the police had reasonable suspicion to conduct an investigatory stop of Briley. Once the officers detained Briley and saw the white residue of cocaine on his face, they had probable cause to arrest him, a fact not disputed by Briley. Thus, the trial court correctly denied the motion to suppress the evidence and statement.

CONCLUSION
Briley's conviction and sentence are affirmed.
AFFIRMED.