310 So.2d 517 (1975)
STATE of Louisiana, Appellee,
v.
Aaron THOMAS, Appellant.
No. 55342.
Supreme Court of Louisiana.
March 31, 1975.
*518 Felix A. Dejean, III, Opelousas, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Morgan J. Goudeau, III, Dist. Atty., Robert Brinkman, First Asst. Dist. Atty., for plaintiff-appellee.
*519 TATE, Justice.
The defendant Thomas was convicted of murder, La.R.S. 14:30, and sentenced to death.[1] Some forty-seven bills of exceptions were reserved during the trial. Upon appeal, based upon those of the exceptions perfected, eight assignments of error are urged.

Context Facts
The defendants were charged with the murder of Leo Doucet at about 9:00 PM on February 2, 1970. He was a taxicab operator. The defendant Thomas and a co-defendant Batiste (whose conviction is not here appealed) had telephoned for a taxi. According to the state's evidence, they did so with the intent of robbing the driver.
After Thomas and Batiste had entered the cab and been driven away, they ordered the driver Doucet to pull over to the side and to give them his wallet. They were armed, Thomas with a .38 caliber pistol and Batiste with a butcher knife. They then drove Doucet to a deserted country area, where Doucet was murdered by repeated stabbing with the knife. Afterwards, they robbed, kidnapped, and murdered a service station operator (Joubert). See State v. Thomas, 290 So.2d 317 (La. 1974).
On the evening of the following day they were arrested. Their arrest then, and a subsequent search of their vehicle which yielded the pistol, are attacked as illegal.

Motion to Suppress
The most serious issue of the appeal is raised by the defendant's bills taken to overruling of motions to suppress the .38 caliber pistol taken from his vehicle shortly after his arrest. (Bill Nos. 40 and 41). The serious issue concerns whether the pistol was improperly admitted as the result of an unconstitutional search and seizure.
The evidence (Tr. 358-396, 419-447, 1542-1582) shows:
At about 9:30 PM on the evening after the murders, the defendant Thomas showed up at the home of a faith healer and midwife in Eunice, about twenty-miles from Opelousas. He wanted help for a friend. He admitted his friend's implication in the two Opelousas robbery-murders then occasioning considerable television concern. The midwife, frightened, refused to help him. Thomas and his co-defendant Batiste then drove away in their old white Thunderbird. Her husband then called the police.
Sufficient probable cause for the arrest is properly based on the information then given the police: the husband's description of the automobile, the wife's photographic identification of one of the suspects, and the reported admission of Thomas to the wife that at least one of the two had been concerned in the brutal Opelousas robbery-killings then so much discussed on television and elsewhere. The police officers had reasonable cause to believe that the defendants had committed a felony, although not in the presence of the officers. La.C.Cr.P. art. 213(3).
Based on the information received, two policemen commenced patrolling Eunice and shortly thereafterwards located the described automobile. After a radioed appeal for other officers, the actual arrest for investigation of the murders was accomplished at a service station some three blocks from the local police headquarters. *520 The arrest was made approximately an hour after the two suspects had appeared at the Eunice midwife's home.
The officers did not search or even look inside the defendant's vehicle at the time of the arrest. The suspects were asked to step out of the car. They were at once driven to the sheriff's substation about two and a half blocks away. One of the officers drove their vehicle and parked it on the side of the police headquarters, unattended.
Soon after the police and the suspects entered the building, one of the arresting police remembered that, as the police had come to the suspects' car at the service station, the passenger (Thomas) on the right side had leaned far forward, as if to put something under the seat. He and another officer therefore went to the car parked outside. Upon opening the unlocked door, they immediately saw a pistol on the floorboard, partly protruding from under the rear of the front seat. The pistol was discovered in the vehicle within ten to fifteen minutes after the arrest.
No search warrant was secured prior to the discovery of the pistol. (After its discovery, no further search of the vehicle was made until a search warrant was secured.) The basic constitutional rule is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendmentsubject only to a few specifically established and well-delineated exceptions." Coolidge v. New Hampshire, 403 U.S. 443, 445-56, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971).
Quite similarly to the State's position in Coolidge, the State here relies upon three of these exceptions: (a) a search incident to a lawful arrest, (b) the search of an automobile based on probable cause, and (c) the seizure of an object in plain view. For the reasons set forth in Coolidge and in State v. Hargiss, 288 So.2d 633 (La. 1974), none of these traditional exceptions here apply:
(a) After the accused is in custody, the warrantless search of his car at another place is simply not incident to his arrest; (b) pretermitting whether there was probable cause to search, no exigent circumstances are shown to have justified by-passing the search warrant procedure before searching this vehicle, which was already in police custody; and (c) the observation of the object in plain view must be made by an officer who has a right to be where he is, either by reason of a lawful search or for some other lawful reason that is, an otherwise unjustified invasion of an individual's person or property cannot be validated by the post-invasion discovery of an object otherwise not in plain view.
Nevertheless, but with some difficulty, we believe the present to concern a distinguishable situation in this shifting and uncertain "quagmire" area of constitutional interpretation.[2] Decisions on quite similar facts seem dissimilarly to validate or invalidate warrantless searches, with widely differing views suggested by the concurring and dissenting justices.[3] With some diffidence, we suggest that the present warrantless search did not violate the constitutional prohibition against unreasonable searches and seizures because:
1. Unlike in Coolidge and our own decision in Hargiss, here the arresting officers *521 had at the time of the arrest the legal right to look where they looked shortly afterwards and discovered the object. If they had looked at the opened door of the vehicle at the time of the arrest, they would have seen the pistol protruding in plain view from under the front seat. Again, had the policeman driving the car to the station looked at the floorboard, as he was legally entitled to, he would have seen the pistol. Arguably, after the removal of the car to the police station, the opening of the door to look at the floor, some ten minutes after the arrest, was justifiable for reasons similar to those held justifying the warrantless search in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Cf. also, Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 2469-72, 41 L.Ed. 2d 325 (1974).
2. Again, unlike in Coolidge and our own decision in Hargiss, at the time of the arrest there was probable cause to make a warrantless search, in connection with the crime for which the arrest was made, at least if limited to unlocked portions of the automobile within reach of the front seats on which the defendants were riding. The police had probable cause to arrest the two occupants of the car for two robbery-murders committed nearby within twenty-four hours of their arrest, and the police believed them to be armed and possibly to have proceeds of the robberies with them. A search of the person of one arrested for a crime may be made at the time of the arrest, and also of immediately adjacent space within his immediate control, in order to remove any weapons as well as to secure any evidence of the crime within his immediate possession. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L. Ed.2d 685 (1969); but see Note, 55 Minn. L.Rev. 1011, 1024-29 (1971). Such a search incident to an arrest is a recognized exception to the requirement for a search warrant.
3. At the time of the look into the automobile, the normal processes incident to arrest and custody were still in progress: The suspects had been brought to the police headquarters in Eunice for interrogation at the scene (they were afforded counsel and, in fact, refused to talk at that time), prior to transporting them to the parish jail at Opelousas, some twenty miles away. A majority of the United States Supreme Court has recently held not unreasonable a warrantless search and seizure closely related to the reason an accused was arrested, although subsequent to it, if made without unreasonable delay after the arrest and if the effects in his possession at the time of the arrest were subject to search and seizure as an incident of the arrest. United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) (a clothing case, but partially relying upon the vehicle case of Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed. 2d 730 (1967)).
We cannot say, taking into consideration the factors noted, that the warrantless look into the automobile, ten minutes after the arrest and reasonably incident to it, was an unreasonable search and seizure such as is prohibited by our state and federal constitutions. If the police officers had looked at the vehicle more closely at the time they arrested the defendants at the service station, they would have observed and seized the pistol, as they had a right to do although without a warrant. We are unwilling to hold that the removal of the vehicle to the police headquarters and the consequent ten-minute delay requires a different result.
However, we must once again emphasize the necessity under the federal and state constitutions of securing a search warrant in the absence of exigent or recognized special circumstances. State v. Hargiss, 288 So.2d 633 (La.1974). In the present case, certain exceptional circumstancesthe limited "search", the immediacy of it after the arrest, the inherent probable cause for searching for weapons or evidence a vehicle occupied by those reasonably suspected of recent robbery-murders *522 have led us to believe the present search and seizure not constitutionally infirm, despite the lack of a search warrant; but, we freely admit, our decision is reconcilable with some but not with other decisions of the United States Supreme Court in this shifting and uncertain area of law.

Reference to Another Crime
Bill Nos. 29 and 47 concern references to another robbery-murder committed by the defendants shortly after the present one of Doucet, the taxi operator; namely, the murder of Joubert, a filling station operator. (See State v. Thomas, 290 So.2d 317 (1974), affirming Thomas's conviction; Batiste pleaded guilty.) During the four days of the trial on the merits, the State did not once inject the issue of the other killing, nor was any evidence produced as to it. The State is to be commended for its judicious questioning, and for the care with which it presented its case so as to avoid over the four days of trial interjecting the prejudicial issue of the other closely-related crime.
Nevertheless, in responses to six isolated questions the witnesses indicated that there had been more than one killing. Tr. 1494, 1495, 1502, 1512, 1513, 1630. In closing argument, there was also an oblique reference to the other crime, Tr. 1783, to which objection was made.
Objection was made only to the first two witness responses (where the witness stated that the defendants had told him they had killed "a filling station [sic] or something" but "didn't refer to anyone else they had killed"). Some of the subsequent witnesses, testifying to the defendants' admissions later in the evening, referred to their simultaneous and inextricable admission that they had killed two men, a taxicab operator and a filling station attendant.
We do not find reversible error. The incidental and slight reference to the other closely-connected crime was not clearly inadmissible in the context of the questions asked nor of the particular evidence deduced.

Remaining Contentions
The other allegations of error likewise do not require reversal:
Bill No. 2: The defendant was not entitled as of right, by pretrial motion, to the names of the state witnesses and to the details of the state's evidence. State v. Browning, 290 So.2d 322 (La.1974); State v. Thomas, 290 So.2d 317 (La.1974). The State did not withhold information of any exculpatory evidence. It also furnished the defendant with information of the alleged method of commission of the crime, as required by law. State v. Clark, 288 So.2d 612 (1974).
Bill No. 4: Pursuant to the defendant's motion, a sanity commission was appointed to examine into the defendant's present and past mental condition. After the filing of the examining doctors' return, a hearing was held. At the hearing, the defendant moved for the appointment of an independent psychiatrist to examine him and make an independent report. Cf., La. C.Cr.P. art. 646.
The defendant concedes that this court has held that a defendant, whether indigent or not, is not entitled to the appointment of an independent expert for such purposes. State v. Square, 257 La. 743, 244 So.2d 200, 209 (1971). We are not willing to re-examine at this time such holding, especially since it was clearly applicable at the time of the present 1970 trial.
Bill Nos. 42 and 43: We find no error in the trial court's finding that this defendant was clearly and intelligently advised of his Miranda rights before he was interrogated, and that the statements given by him were free and voluntary.
Bill No. 45: Likewise, Miranda does not prevent the admission of a conversation between the defendant Thomas and the *523 co-defendant Batiste overheard by a deputy. The defendants were sitting in the backseat of an automobile at the state mental hospital as they and the deputy waited for completion of the papers for their transfer back to Opelousas.[4] The evidence shows that this conversation between the prisoners was spontaneous and without any inducement or other influence by the deputy who was waiting nearby.
Spontaneous volunteered statements given without compelling influence or custodial questioning are not subject to exclusion because of non-compliance with Miranda's prior-warning requirements. State v. Hall, 257 La. 253, 242 So.2d 239 (1970). Although the defendants were in custody, they were not interrogated. They were not threatened, coerced, or, in any way, forced to make incriminating statements. That which they said, under such circumstances, was admissible as evidence against them.
Bill No. 44: Having held that the Miranda warnings were given prior to interrogation of the defendant, the knife found as a result of such interrogation was admissible. It was not (as contended) the fruit of unconstitutional state action.
Bill No. 47: The remark of the district attorney incidentally referred to the race of the defendants. It was not of a nature to create prejudice against them such as requires a mistrial under La.C.Cr. P. art. 770. The remark: "* * * You saw, Gentlemen, in the investigation of this case, two men, two Negro men, charged with a crime in the Parish of St. Landry who were treated with justice[Objection and request for a mistrial]."

Death Sentence
On the basis of the record before us,[5] the defendant was sentenced to death. This sentence was given before Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L. Ed.2d 346 (1972) held the death penalty unconstitutional, insofar as applied under statutes similar to that applicable to the present offense at the time of the sentence. The case must therefore be remanded to the trial court for re-sentence in accordance with law. State v. Franklin, 263 La. 344, 268 So.2d 249 (1972).

Decree
Accordingly, for the reasons assigned, the conviction of the defendant is affirmed; but the death sentence imposed upon him is annulled and set aside. The case is remanded to the district court, with instructions to the trial judge to re-sentence the defendant in accordance with law.
Affirmed.
BARHAM, J., dissented and assigned reasons.
BARHAM, Justice (dissenting).
The majority acknowledges that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendmentsubject only to a few specifically established and well-delineated exceptions." Under the circumstances of the present case, it is clear that the law enforcement officials had ample opportunity to secure the arrested defendant's car from interference and more than adequate time within which to apply for a search warrant; *524 the car was driven by an officer from the scene of the arrest to the police station and left there unattended and unlocked. In fact, it was the duty of the police to secure and safeguard defendant's car by locking it, just as they are required to secure and safeguard the other effects in a defendant's possession at the time of the arrest. Nevertheless, the majority finds it necessary to approve the warrantless search by creating a new and hybrid exception based upon probable cause to search the automobile and connexity between the scope of the search and the crime for which the arrest was made. In effect, the majority "specifically establish[es] and * * * delineate[s]" a new exception to the warrant requirement.
In my opinion this designation is made without regard to the central issues which must be resolved in every warrantless search situation, that is, the rationale and reasonableness of the warrantless search. Unlike the case of Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), cited by the majority, wherein a warrantless search of the exterior of a car was approved at least partially because there was no expectation of privacy in the exterior of a car parked in a public place, a reasonable expectation of privacy existed in the case at bar. By conceding the inapplicability of the "search incident to a lawful arrest" exception, and the "automobile" exception (because there are no "exigent circumstances" to justify by-passing the warrant application procedure), the majority admits that the rationale and reasons which have earned these exceptions their validity do not obtain here. The United States Supreme Court has affirmatively stated that the scope of a search without a warrant must be "commensurate with the rationale that excepts the search from the warrant requirement." Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). In this case I am unable to find articulated a rationale for the newly created exception against which the scope of the search may be tested. The end result of the majority's decision is that this search is found to be reasonable notwithstanding an apparent lack of substantial basis for such a conclusion.
The following language which appears in the United States Supreme Court decision of Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) should, in my opinion, be regarded as eminently applicable in the present case: "* * * The [specifically established and well-delineated] exceptions [to the warrant requirement] are `jealously and carefully drawn,' and there must be `a showing by those who seek exemption... that the exigencies of the situation made that course imperative.' `[T]he burden is on those seeking the exemption to show the need for it.' * * *." (Emphasis supplied; footnotes omitted.) No such showing is evident to me in the instant case. Decisions such as this majority opinion do violence to the Fourth Amendment guarantee against unreasonable searches and seizures and tend to encourage disregard for an individual's paramount constitutional rights.
I respectfully dissent.
NOTES
[1] The defendant was tried and sentenced in 1970, prior to the decisions of the United States Supreme Court invalidating death penalties under statutes similar to the one applicable at the time of the crime and of the trial. The long delay in filing the appeal in this court resulted from difficulties in transcription of the 12-day trial (including 8 days of voir dire examinations), substitutions of counsel for appeal, and illness of court officials at critical stages in preparation of the transcript.
[2] See: LaFave, Warrantless Searches and the Supreme Court: Further Ventures into the "Quagmire", 8 Crim.L.Bull. 9 (1972); Note, Warrantless Searches and Seizures of Automobiles, 87 Harv.L.Rev. 835 (1974).
[3] See, e.g., search incident to an arrest (United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) vs. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)) or search of automobile after it is moved to police station and no exigent circumstances justified not securing warrant (Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) vs. Coolidge and also vs. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964)).
[4] The entire conversation to which the deputy testified was that Thomas told Batiste: "I only had the gun and you had the knife."
[5] A minute entry of August 28, 1973, Tr. 49, indicates that a motion for re-sentence was granted. However, the motion itself is not in the record; nor was this court able, in consultation with the office of the Clerk of Court of St. Landry parish, to clarify upon what basis the minute entry was made.