884 So.2d 628 (2004)
STATE of Louisiana
v.
Melvin M. CAMBRICE, III.
Nos. 2004-KA-0827, 2004-KA-0828.
Court of Appeal of Louisiana, Fourth Circuit.
September 8, 2004.
*629 Eddie J. Jordan, Jr., District Attorney, Battle Bell, IV, Assistant District Attorney, New Orleans, LA, for Appellee, State of Louisiana.
Christopher A. Aberle, Louisiana Appellate Project, Mandeville, LA, for Defendant/Appellant, Melvin M. Cambrice, III.
(Court composed of Judge MICHAEL E. KIRBY, Judge EDWIN A. LOMBARD, Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
The defendant, Melvin M. Cambrice, III, pled guilty to attempted possession of a firearm by a convicted felon and to possession of stolen property valued at more than $500.00. Mr. Cambrice, however, reserved his right under State v. Crosby, 338 So.2d 584 (La.1976),[1] to appeal the adverse rulings of the trial court on his motions to *630 suppress the evidence against him. Mr. Cambrice is now appealing those rulings.

STATEMENT OF THE CASE
Mr. Cambrice was charged in a bill of information with one count of violating La. R.S. 14:95.1, which prohibits a person who has been convicted of certain felonies from possessing a firearm. In a separate bill of information in another case, Mr. Cambrice was charged with the illegal possession of stolen things in violation of La. R.S. 14:69.
At an arraignment Mr. Cambrice entered a not guilty plea on both of the charges against him. Pretrial motions were heard jointly on both charges, and the motions to suppress the evidence against Mr. Cambrice were denied.
On the day that Mr. Cambrice appeared for trial, the state amended the bill of information charging him with possession of a firearm by a convicted felon to charge him with the attempted crime instead. Mr. Cambrice then pled guilty to the attempted possession of a firearm by a convicted felon. In the other case against him, he withdrew his prior plea of not guilty and pled guilty to possession of stolen things valued at more than $500. Both of Mr. Cambrice's guilty pleas were conditioned upon his right to seek review of the rulings on his motions to suppress the evidence against him.
In the case where Mr. Cambrice pled guilty to the attempted possession of a firearm by a convicted felon, he was sentenced by the trial court to serve three years at hard labor without the benefit of probation, parole, or suspension of sentence. In the case where Mr. Cambrice pled guilty to possession of stolen things worth more than $500, he was sentenced to serve three years at hard labor. The court ordered that the sentences run concurrently with each other and that Mr. Cambrice be given full credit for time served.
After the appeals in both cases were lodged, Mr. Cambrice moved to have the cases consolidated. This Court consolidated the cases.

STATEMENT OF FACTS
Mr. Cambrice was asleep on a bench at the Canal Street ferry landing in New Orleans at 7:00 a.m. one morning. New Orleans Police Department ("NOPD") Officer Patrick Baxter was patrolling the area in response to citizen complaints involving public intoxication and gambling at the ferry landing. He observed Mr. Cambrice sleeping on the bench using a blue duffel bag as a pillow. At the hearing on Mr. Cambrice's motions to suppress the evidence against him, Officer Baxter testified that he woke Mr. Cambrice and spoke to him. Officer Baxter further testified that Mr. Cambrice "smelled strongly of alcohol and had slurred speech." Based on these facts, Officer Baxter arrested Mr. Cambrice for public intoxication, a municipal offense.[2]
After he arrested Mr. Cambrice, Officer Baxter inventoried the contents of the duffel bag that Mr. Cambrice had been using as a pillow. Inside the bag Officer Baxter found a handgun, a digital camera, a radar detector, a zoom lens, and other camera equipment on top of some clothing. Mr. Cambrice was then placed under arrest by Officer Baxter for illegally carrying a weapon.
*631 At the suppression hearing Officer Baxter testified on cross-examination that he did not observe any evidence of gambling, such as cards or dice, and that he did not observe any alcoholic beverages in Mr. Cambrice's possession. He further testified that he probably startled Mr. Cambrice when he woke him and agreed that it is not uncommon for a person to be groggy upon being awakened. Finally, Officer Baxter testified that he did not conduct a field sobriety test to determine whether Mr. Cambrice was intoxicated.
NOPD Officer Fred Moore assisted Officer Baxter with Mr. Cambrice's arrest. Officer Moore testified that he was present when Officer Baxter first approached Mr. Cambrice, and Officer Moore's description of the events that took place in connection with Mr. Cambrice's arrest essentially matched that of Officer Baxter. Officer Moore, however, remembered that Mr. Cambrice was sleeping on the ferry landing rather than on a bench. Officer Moore also testified that he could smell alcohol on Mr. Cambrice's breath.
Officer Moore further testified that on the same day that Mr. Cambrice had been arrested for the illegal weapon charge, he later investigated an automobile burglary at the Wyndham Hotel on Canal Street in New Orleans. When the victim of the burglary described the property that had been stolen from the automobile, Officer Moore immediately recognized that some of the items found in Mr. Cambrice's duffel bag were the items described by the victim. Mr. Cambrice was then charged with the possession of the stolen things.

ERRORS PATENT
A review of the record does not reveal any errors patent.
ASSIGNMENT OF ERROR
The police did not have probable cause to arrest Mr. Cambrice for public intoxication. Therefore, they did not have the right to search his duffel bag.
Mr. Cambrice's sole assignment of error in this case is that the search of his duffel bag was illegal, because there was no probable cause for his arrest. If we find Mr. Cambrice to have been arrested without probable cause, then the search of his duffel bag was unlawful, and the evidence seized from the bag should have been suppressed by the trial court.

Investigatory Stop
The first issue to consider in the instant case is whether the officers who stopped Mr. Cambrice had reasonable suspicion to conduct an investigatory stop. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court first recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22, 88 S.Ct. at 1880. According to the Terry case, such an investigatory stop is not an unlawful "seizure" and, therefore, does not violate the prohibition against unreasonable searches and seizures established by the Fourth Amendment to the United States Constitution.
In Louisiana there is statutory authorization for investigatory stops on less than the probable cause required for an arrest. La. C.Cr.P. art. 215.1(A) provides that "[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions."
In State v. Dank, 99-0390 (La.App. 4 Cir. 5/24/2000), 764 So.2d 148, this Court *632 explained the factors a reviewing court must consider in determining whether an investigatory stop was permissible. This Court stated:
"Reasonable suspicion" to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case.... Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. In assessing the reasonableness of an investigatory stop .... [t]he totality of the circumstances must be considered in determining whether reasonable suspicion exists.
99-0390, pp. 4-5; 764 So.2d at 155 (citations omitted).
In the instant case, the police officers saw Mr. Cambrice sleeping on public property in an area where there had been complaints from citizens that public intoxication and gambling were creating public disturbances. Section 54-412 of the Code of the City of New Orleans provides in paragraph (a) that "[i]t shall be unlawful for any person to commit the crime of unauthorized public habitation." Paragraph(b)(1) of section 54-412 defines "unauthorized public habitation" to include "[t]he unauthorized sleeping by any person on a street, sidewalk, neutral ground, alleyway, park or other public property in this city." Paragraph (c) of section 54-412 provides, however, that "[n]o person shall be arrested ... or be charged with a violation of this section, unless such person continues an activity prohibited by this section after a law enforcement officer has informed him or her that such continued conduct is in violation of a city ordinance."
The police officers in this case were justified in approaching Mr. Cambrice, who was sleeping on public property, to inform him that he was violating a city ordinance. It was also for Mr. Cambrice's own safety that the police officers woke him to determine whether he was unconscious or simply asleep. Once they approached Mr. Cambrice and awakened him, they noticed that his breath smelled of alcohol and that his speech was slurred.
Based on the circumstances, i.e., that Mr. Cambrice's breath smelled strongly of alcohol and that his speech was slurred, Officer Baxter concluded that Mr. Cambrice was intoxicated. Officer Baxter then arrested Mr. Cambrice for public intoxication in violation of Section 54-405 of the Code of the City of New Orleans, which provides that it is unlawful for a person to appear in public manifestly under the influence of alcohol to the degree that he may endanger himself or others.
Mr. Cambrice argues that he should not have been arrested for public intoxication, because he presented no danger to himself or others. The issue is not whether he, in fact, presented a danger to himself or others. The issue is the degree of his intoxication. Because Mr. Cambrice was obviously intoxicated to a degree that he might present a danger to himself or others, his conduct fell within that proscribed by section 54-405 Code of the City of New Orleans. It was sufficient for the police officers to have reasonably believed, based on the totality of the circumstances and their prior experience, that Mr. Cambrice was intoxicated to such a degree that he might endanger himself or others.
Clearly, Mr. Cambrice was in close proximity to the Mississippi River where he could have stumbled and fallen into the water. There was no one with him to assist him while he was intoxicated so that he did not inadvertently place himself in harm's way. Finally, he could have been a danger to tourists and others who frequented the ferry landing if he accosted them because of his lack of inhibition due *633 to his intoxication. We find that Officer Baxter had probable cause to arrest Mr. Cambrice for public intoxication.
Mr. Cambrice relies on the case of State v. Smiley, 99-0065 (La.App. 4 Cir.3/3/99), 729 So.2d 743. We do not find the Smiley case dispositive in the instant case. In the Smiley case the defendant was arrested "to keep him from entering his truck and driving while intoxicated." 99-0065, p. 4, 729 So.2d at 746. He was, however, accompanied by two companions who could have driven the truck, and there was no indication that he would disturb or alarm the public.
In the instant case Mr. Cambrice was alone with no one to assist him while he was intoxicated. Additionally, Mr. Cambrice was likely to alarm or disturb the public. The defendant in the Smiley case was arrested as he was leaving the bar where he had been drinking, but Mr. Cambrice was sleeping on public property. An intoxicated man who is alone in the early morning in an area frequented by tourists as well as the local citizens is much more likely to disturb the public than is an intoxicated man leaving a bar in the company of others who are able to control his actions. The public has an expectation that a person leaving a bar might be inebriated, but the public does not have that same expectation with respect to a person at a ferry landing.

Warrantless Seizure
Both the United States and the Louisiana constitutions prohibit unreasonable searches and seizures, and a warrant is normally required for a search to be conducted. U.S. Const. amend. XIV; La. Const. art. 1, § 5. In State v. Thompson, XXXX-XXXX (La.4/9/03), 842 So.2d 330, the Louisiana Supreme Court discussed the subject of warrantless searches and seizures as follows:
It is well settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless seizure and search can be justified by one of the narrowly drawn exceptions to the warrant requirement.
Id., p. 6, 842 So.2d at 335.
In State v. Thomas, 310 So.2d 517 (La. 1975), the Louisiana Supreme Court discussed one of the narrow exceptions to the warrant requirement. The Supreme Court stated as follows:
A search of the person of one arrested for a crime may be made at the time of the arrest, and also of immediately adjacent space within his immediate control, in order to remove any weapons as well as to secure any evidence of the crime within his immediate possession. Such a search incident to an arrest is a recognized exception to the requirement for a search warrant.
310 So.2d at 521 (citations omitted). See also Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), in which the United States Supreme Court sanctioned a warrantless search incident to an arrest by stating that "[t]here is ample justification, therefore, for a search of the arrestee's person and the area `within his immediate control'construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." 395 U.S. at 763, 89 S.Ct. at 2040.
In the instant case we have determined that the arrest of Mr. Cambrice was valid. Therefore, under the exception to the search warrant requirement discussed in the Thomas case and the Chimel case, Officer Baxter was authorized to inventory the contents of Mr. Cambrice's duffel bag without a warrant. The bag was located in an area in Mr. Cambrice's immediate control. The search, in fact, revealed that Mr. *634 Cambrice was concealing a weapon in the bag. He had access to this weapon and had Officer Baxter been unable to search the bag, because he did not have a search warrant, the weapon could easily have been used to harm Officer Baxter and Officer Moore.
We find that Officer Baxter legally searched the duffel bag Mr. Cambrice had with him. The trial court properly found that the evidence obtained from the bag was admissible into evidence.

CONCLUSION
We find that the trial court did not err in refusing to suppress the evidence against Mr. Cambrice. Mr. Cambrice's guilty pleas and his sentences are hereby affirmed.
AFFIRMED.
NOTES
[1] In the Crosby case the Louisiana Supreme Court held that "we have determined that we are not barred from reviewing the assignments of error specifically reserved at the time of the plea of guilty, where the trial court accepted the plea of guilty so conditioned (which the court had discretion to refuse, if proffered upon such reservation.)" 338 So.2d at 588.
[2] Section 54-405 of the Code of the City of New Orleans provides as follows:

It is unlawful for any person to appear in a public place manifestly under the influence of alcohol, narcotics or other drugs, not therapeutically administered, to the degree that he may endanger himself or other persons or property.