923 So.2d 763 (2006)
STATE of Louisiana
v.
Shirley J. HAWKINS.
No. 2005-KA-0810.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 2006.
Eddie J. Jordan, Jr., District Attorney, Meri M. Hartley, Assistant District Attorney, New Orleans, Louisiana, for Plaintiff/Appellee.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR., Judge LEON A. CANNIZZARO, JR.).
*764 TERRI F. LOVE, Judge.
On February 23, 2005, Shirley Hawkins was found guilty of one count of possession of cocaine. After denial of her post verdict judgment of acquittal and motion for new trial was denied, the trial court imposed a two-year sentence. It is from this judgment Shirley Hawkins appeals.

FACTS AND PROCEDURAL HISTORY
On October 12, 2004, at approximately 1:30 a.m., Shirley Hawkins ("Ms.Hawkins") was initially arrested for public intoxication and upon a search incident to her arrest for public intoxication; Ms. Hawkins was then arrested for possession of cocaine by Officer Nicholas Burton ("Officer Burton") and Officer Joe Lusk ("Officer Lusk").
On November 4, 2004, the State filed a bill of information charging the defendant-appellant Shirley Hawkins with one count of possession of cocaine, a violation of La. R.S. 40:967(C). She entered a not guilty plea at her arraignment on November 9, 2004. Ms. Hawkins filed a Motion to Suppress the Evidence and a pretrial motion hearing was held on January 6, 2005; at the conclusion of the hearing, the trial court denied the defendant's motion to suppress the evidence.
Officers Burton and Lusk were on routine proactive patrol at the time when they stopped Ms. Hawkins after they observed her swaying and staggering.[1] After the officers exited their police vehicle and stopped the defendant, they could smell the strong odor of alcohol emanating from her. When they attempted to ask her questions, she tried to walk away, almost falling in the process. At that point they placed her under arrest for public intoxication. Officer Lusk then searched the defendant. With the aid of a flashlight, Officer Lusk testified that he found a cigarette pack, and upon inspection observed what appeared to be a rock of crack cocaine inside the pack. Officer Lusk shook out the contents of the pack and an additional piece fell out. Ms. Hawkins was then arrested for possession of cocaine. Alan Sison, an expert in analysis of narcotics, testified that he tested two pieces of a rock-like substance, which tested positive for cocaine.
A six-person jury found the defendant guilty as charged. The trial court denied the defendant's post verdict judgment of acquittal and motion for new trial. After counsel indicated that the defendant was ready for sentencing, the court imposed a two-year sentence on the defendant, with a recommendation that she be placed in the Blue Walters drug program. The defendant's motion to reconsider sentence was denied. The court granted her motion for an appeal.

ERRORS PATENT
A review of the record for errors patent reveals none.

LEGAL ANALYSIS
In her sole assignment of error the appellant argues that the trial court erred when it upheld the seizure of the cocaine found in a search incidental to the defendant's arrest for public intoxication. Ms. Hawkins contends that the officers lacked a sufficient basis for the arrest.
This Court set forth the applicable law on probable cause for an arrest in State v. Pham, 01-2199 (La.App. 4 Cir. 1/22/03), 839 So.2d 214, as follows:
It is not a prerequisite for the existence of probable cause to make an arrest that the police officers know at the *765 time of the arrest that the particular crime has definitely been committed; it is sufficient that it is reasonably probable that the crime has been committed under the totality of the known circumstances. An arresting officer need only have a reasonable basis for believing that his information and conclusions are correct. For an arrest, the law does not require that "reasonable cause to believe" be established by evidence sufficient to convict; the arresting officer need not be convinced beyond a reasonable doubt of the arrested person's guilt. The standard of reasonable cause to believe is a lesser degree of proof than beyond a reasonable doubt, determined by the setting in which the arrest took place, together with the facts and circumstances known to the arresting officer from which he might draw conclusions warranted by his training and experience.
Probable cause for an arrest must be judged by the probabilities and practical considerations of everyday life in which average people, and particularly average police officers, can be expected to act. The reputation of the area is an articulable fact upon which a police officer may legitimately rely. The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or a preponderance standard demands. Deference should be given to the experience of the police who were present at the time of the incident. The fundamental philosophy behind the probable cause requirement of the Fourth Amendment is that common rumor or report is not an adequate basis for the arrest of a person. Police are not required to arrest an individual at the point at which probable cause for arrest arises.
Pursuant to a lawful arrest, the officer may lawfully conduct a full search of the arrestee and the area within his immediate control for weapons and for evidence of a crime. (Citations omitted).
Pham, 01-2199, pp. 5-7, 839 So.2d at 219-220.
This Court has considered several cases wherein a defendant was detained or arrested for intoxication. In State v. Harris, 99-1434 (La.App. 4 Cir. 9/8/99), 744 So.2d 160, the officers, who were patrolling an area known for narcotics violations and residence burglaries, observed the defendant walk out from an area near a church and into the street, even though there was a sidewalk adjacent to the street. As Harris began walking down the middle of the street, the officers noticed that he appeared to be weaving. The officers stopped Harris and began questioning him. He appeared to be disoriented and to have problems understanding the officers. Upon conducting a pat down search, one officer neared Harris' ankle and observed a crack pipe sticking out from one of his shoes. The officers arrested Harris for possession of drug paraphernalia and issued citations to him for walking in the street when a sidewalk is provided (a municipal violation), public intoxication, and giving a false address. In reversing the trial court's decision to grant the motion to suppress evidence, this Court found that the defendant was validly stopped for the municipal violation of walking in the street where a sidewalk is provided, and that the further indications of his intoxication in an area known for narcotics activity justified a frisk for weapons during which the crack pipe was discovered in plain view.
In State v. Ricard, 94-0975 (La.App. 4 Cir. 7/14/94), 640 So.2d 880, police officers were patrolling near an area known for its high drug and prostitution activity. As the officers were pulling into a convenience *766 store parking lot, they observed the defendant arguing with four females. When the officers stopped and exited their vehicle, the defendant saw the officers. He stumbled to the back of the vehicle as if he had been drinking or was intoxicated and disregarded the officers' request for him to stop. As the defendant attempted to put his clenched right hand into his coat pocket, the officers, who believed that he might be reaching for a gun, grabbed the defendant, opened his hand, found him to be in possession of a metal tube with a white residue inside, and arrested him for possession of cocaine. This Court found that these circumstances were sufficient to justify an investigatory stop and frisk for weapons.
In State v. Droulia, 96-1428 (La.App. 4 Cir. 4/2/97), 692 So.2d 1330, this Court was faced with an arrest for public drunkenness, which resulted in a possession of cocaine charge based on evidence found during a search of the defendant. The State conceded that there was no city ordinance prohibiting public intoxication. In that case concerned citizens told the police officers that the defendant was walking and weaving in and out of traffic. When the officers investigated, they noticed a strong odor of alcohol and observed him to be incoherent and unable to communicate. The officers felt that Droulia was highly intoxicated, and they were concerned that Droulia presented a danger to himself and to passing motorists. This Court upheld the stop and search in that case because the defendant's actions had violated La. R.S. 14:103 A(3), disturbing the peace, which can be defined as appearing in an intoxicated condition in such manner as would foreseeably disturb or alarm the public. Id.
In State v. Smiley, 99-0065 (La.App. 4 Cir. 3/3/99), 729 So.2d 743, this Court affirmed the trial court's decision finding no probable cause and suppressing the evidence (cocaine) when a defendant was arrested for public intoxication. The facts were as follows:
In the early morning hours of 9 September 1998, two police officers were standing at the corner of St. Ann and Bourbon Streets when an unknown man approached them and reported that a man in a nearby truck had just tried to sell him drugs. As the officers were looking at the truck, they noticed the defendant and two other people leave the truck and stagger into a nearby bar. The unknown man identified Smiley as the man who tried to sell him drugs. The officers called for backup, and within five minutes four officers entered the bar and eventually located Smiley. Smiley agreed to accompany the officers outside. The officers noticed Smiley was having difficulty making his way out of the bar, staggering and weaving. One officer also got close to Smiley as he exited the bar and smelled alcohol on Smiley's breath. When they reached the sidewalk, the officer placed Smiley under arrest for public intoxication, purportedly to keep him from driving away in the truck. Smiley's companions must have also exited the bar because the officers conducted a pat down search of all three for the officers' safety. The officer testified that as one officer was pulling items out of Smiley's pants pocket, a bag of what was later found to be cocaine came out of his pocket.
Smiley, 99-0065, pp. 1-2, 729 So.2d at 744. This Court concluded that the officer had reasonable cause to stop the defendant based on the fact that a citizen had identified him as the man who had tried to sell him drugs. The officer testified that he arrested the defendant for public intoxication to prevent him from driving away in his truck. This Court discussed the fact that mere "public intoxication" was not prohibited by municipal ordinances or state statutes:

*767 It is unclear under exactly what provision the defendant was arrested at that point. The only statute which could possibly apply would be LSA-R.S. 14:103, the disturbing the peace statute. Subpart A provides in part: "Disturbing the peace is the doing of any of the following in such a manner as would foreseeably disturb or alarm the public: ... (3) Appearing in an intoxicated condition." Here, there was nothing in the officer's testimony, which should have led him to believe that the defendant's staggering would disturb or alarm the public. A more analogous provision could be § 54-405 of the New Orleans Municipal Code, which provides: "It is unlawful for any person to appear in a public place manifestly under the influence of alcohol, narcotics or other drugs, not therapeutically administered, to the degree that he may endanger himself or other persons or property." However, again there was nothing in the officer's testimony, which indicated the defendant's actions at the time he was leaving the bar would endanger the public. The officer testified he arrested the defendant to keep him from entering his truck and driving while intoxicated. However, the officers did not know that the defendant would be leaving anytime soon or that if he were leaving that he would be driving his truck, given the fact that he had two companions with him who could possibly drive, and the officer gave no indication of their condition. Therefore, at the time the officers placed the defendant under arrest, there was no probable cause to arrest him. Thus, the subsequent search, which produced the cocaine, could not be validated as a search incident to his arrest. (Citations omitted)
Smiley, 99-0065, pp. 4-5, 729 So.2d at 746.
This Court distinguished Smiley in State v. Cambrice, 04-0827 (La.App. 4 Cir. 9/8/04), 884 So.2d 628, writ denied 04-2504 (La.2/18/05), 896 So.2d 27. In Cambrice a police officer was patrolling the Canal Street ferry landing early in the morning in response to citizen complaints of public intoxication and gambling in the area. The officer saw the defendant sleeping on a bench and woke him up. According to the officer's testimony at the subsequent motion hearing, the defendant smelled strongly of alcohol and had slurred speech; there was no evidence of gambling activity around him, nor was the defendant in possession of any alcoholic beverages. The officer placed him under arrest for public intoxication. A search of the duffel bag, which the defendant was using for a pillow, revealed a weapon. This Court on appeal held that the officers were justified in approaching the defendant to give him a warning for sleeping on public property. The Court then found that, based solely on the defendant's slurred speech and the odor of alcohol on his breath, the officer had probable cause to arrest him for intoxication. To the defendant's argument that there was no evidence he posed a danger to himself or others, as required under the ordinance, the Court responded that, "It was sufficient for the police officers to have reasonably believed, based on the totality of the circumstances and their prior experience, that Mr. Cambrice was intoxicated to such a degree that he might endanger himself or others." Cambrice, 04-2504, p. 7, 884 So.2d at 632. The Court then distinguished Smiley, noting that he had companions to assist him, while Mr. Cambrice was alone and near the river. Furthermore, the Court noted that the defendant was sleeping in a public area frequented by tourists and local citizen who were "much more likely" to be disturbed than someone seeing "an intoxicated man leaving a bar in the company of *768 others who are able to control his actions. The public has an expectation that a person leaving bar might be inebriated, but the public does not have that same expectation with respect to a person at a ferry landing." Cambrice, 04-2504, p. 8, 884 So.2d at 633.
A notable aspect of Cambrice is the Court's acceptance of the police officer's opinion, based solely on slurred speech and an odor of alcohol, that the defendant was intoxicated. The important question in Cambrice and Smiley was not whether the officers involved correctly determined that the subjects were intoxicated, but whether the circumstances warranted an arrest because the subjects were either a danger to themselves or others or would disturb the peace. It is this latter element of the crime of public intoxication, which the appellant argues the officers failed to establish in this case.
In support of her argument the appellant relies on Smiley and State v. Lackings, 00-0423 (La.App. 4 Cir. 4/5/00), 759 So.2d 918. Lackings is readily distinguishable however because in that case the police officers admitted, and the trial court found, that the sole basis for the stop of the defendant was that he was drinking from an open container. There was no other indication of criminal activity, and at the time the police stopped and searched him incidental to arrest, all they had observed him doing was standing on the street corner. This Court upheld the suppression of evidence in Lackings based on an earlier case, State v. Hoye, 94-0445 (La.App. 4 Cir. 4/14/94), 635 So.2d 1289, which was factually identical. In Hoye this Court had opined that "[P]eople have a constitutional right to stand on the corner in that type of area with a beer can and not have to be subjected to police intrusion." Id., 94-0445, p. 2, 635 So.2d at 1290. In the instant case, the police did not stop the defendant and arrest her for having an open container, and thus neither Hoye nor Lackings is dispositive of the issue.
In the instant case, a review of the transcript of the motion hearing, at which only Officer Lusk testified, provides little more information regarding the arrest of the defendant than that elicited at trial. Officer Lusk stated that he and his partner, Officer Barton, had been driving up and down Newton Street on proactive patrol when they observed the defendant, "stumbling, staggering down the sidewalk" and that she "appeared to be heavily intoxicated." He testified that they stopped to see if the defendant was all right. She exhibited slurred speech, her motor skills were impaired, and she also reeked of alcohol. On cross-examination, Officer Lusk stated that the incident occurred in "late-night hours." When questioned about the length of time in which they observed the defendant before stopping her, Officer Lusk stated that he did not know how many blocks they had been driving. He further testified that they had been "patrolling up and down Newton because it's a high-crime area and it's a high-narcotic area, and we've made a lots of arrests in the past on Newton Street alone in ... the 15, 1600 block of Newton Street." He testified that the defendant was alone. He further stated that they did not conduct any type of field sobriety test on the defendant because "[f]or public intoxication you don't have to have a field sobriety test, only for DWI." Nevertheless, according to Officer Lusk, they "knew right off the bat that she was highly intoxicated." The officer further testified that the defendant made no statements except that she questioned the officers about what she had done, stating "I'm not drunk. I only had a couple of beers."
*769 Officer Burton specifically testified at trial that Ms. Hawkins was arrested because they felt she was a danger to the public. However, there is nothing in the record that evidences that Ms. Hawkins was behaving in an irrational manner, was incapable of discerning what the officers were asking of her, or that they had received any reports regarding an intoxicated person walking along the sidewalk or in the middle of Newton Street. The officers never indicated that Ms. Hawkins was weaving into the street, nor was there any indication that there were other persons in the area who might have been disturbed by her presence in an intoxicated state. In the absences of such evidence, in light of the fact that neither of the police officers who observed Ms. Hawkins that night testified that they felt she was a danger to herself and based upon the testimony of Officer Burton that Ms. Hawkins was arrested because they felt she was a danger to the public, we cannot say that her mere intoxication was sufficient to warrant an arrest.
According to the municipal statute and Smiley, mere intoxication, is not enough to justify an arrest for public intoxication, unless the subjects were either a danger to themselves or others, or would disturb the peace. In Cambrice, this Court affirmed the trial court's denial of the motion to suppress, accepting an inference that the defendant's intoxication in a tourist area and near the river posed a disturbance to the public and a danger to himself. Conversely, the facts in the case sub judice do not lend themselves to the same analysis.
After careful review of the record, we find that Ms. Hawkins' actions of merely walking down the street in an intoxicated condition, without more, is insufficient to establish that the defendant posed a danger to herself, others, or a disturbance to the public so as to justify a lawful arrest.

DECREE
Based on the foregoing, the trial court's judgment is reversed.
REVERSED.
CANNIZZARO, J. Dissents With Reasons.
CANNIZZARO, J., dissenting with reasons.
I respectfully dissent from the majority opinion. Section 54-405 of the Code of the City of New Orleans does not require that a defendant arrested for public intoxication actually be a danger to himself or others. The ordinance states that "[i]t is unlawful for any person to appear in a public place manifestly under the influence of alcohol, narcotics or other drugs, not therapeutically administered, to the degree that he may endanger himself or other persons or property." (Emphasis added.) The majority opinion misapplies the law and creates an impossible burden for showing that a person who appears to be intoxicated might endanger herself. Placing oneself in obvious danger does not meet the standard created in the majority opinion. The clear intent of the New Orleans City Council in enacting the public intoxication ordinance was not only to permit police officers to act after an injury has occurred but also to allow police officers to prevent injury by or to an intoxicated person. Thus, the inquiry in the instant case is whether Ms. Hawkins was intoxicated to the degree that she might endanger herself, not whether she had, in fact, endangered herself.
The facts in the instant case show that Ms. Hawkins was stumbling and staggering down the sidewalk late at night in a high crime area where many arrests had been made. She smelled of alcohol, and she exhibited slurred speech. After she was stopped by police officers, she almost *770 fell when she tried to walk away. She was clearly impaired to a degree that she was in danger of falling and injuring herself. She was a woman walking alone late at night in an obviously intoxicated state in a high crime area. Therefore, she was also clearly in danger of being preyed upon by anyone intent upon robbing her or attacking her while she was in a particularly vulnerable condition due to her intoxication.
Based on the majority's ruling, what is a police officer to do when confronted with an intoxicated person who can barely stand? Under the majority ruling, the police officer would not have the right to arrest the person as being a possible danger to herself. In my opinion, anyone who is inebriated to such a degree that she cannot walk down a concrete sidewalk without losing her balance is impaired to such a degree that she may be a danger to herself. It is not necessary for that person to fall and injure herself before she can be arrested for violating the public intoxication ordinance.
The majority opinion appears to question the trial court's finding that Ms. Hawkins was intoxicated to a degree that she might pose a danger to herself or others. The majority states that one of the police officers testified "that Ms. Hawkins was arrested because they felt she was a danger to the public." The majority further states that there is nothing in the record to evidence "that they [the police officers] had received any reports regarding an intoxicated person walking along the sidewalk or in the middle of Newton Street." The majority also states that the police officers "never indicated that Ms. Hawkins was weaving into the street." Because the trial court judge found that the evidence seized in the search undertaken in connection with Ms. Hawkins' arrest was admissible, the trial court judge had to have found that the arrest was lawful on the ground that Ms. Hawkins appeared to be intoxicated and might pose a danger to herself or others. To reach the conclusion that he did, the trial court judge had to have determined at the suppression hearing that the testimony of the police officers was credible.
In State v. Mims, 98-2572 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-94, this Court stated that "[a] trial court's ruling on a Motion to Suppress the Evidence is entitled to great weight, because the district court had the opportunity to observe the witnesses and weigh the credibility of their testimony." By reversing the trial court's decision in the instant case, the majority has substituted their decision for the trial court's decision without any explanation regarding why they did not defer to the trial court's credibility determination on the issue of Ms. Hawkins' intoxication and the possible danger it posed.
Based on the foregoing discussion, I would find that Ms. Hawkins was properly arrested. Therefore, I would uphold the district court's denial of Ms. Hawkins' motion to suppress the evidence seized in connection with her arrest.
NOTES
[1] Officer Lusk testified at the hearing on the Motion to Suppress, he did not testify at the trial. Officer Burton, who did not testify at the Motion hearing, was the only officer to testify at the trial.